United States District Court
Southern District of Texas

**ENTERED**

February 10, 2026

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ROEL FELIPE LUNA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:25-CV-00083 |
| | § | |
| LELAND DUDEK, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Roel F.L. ("Roel")[1] filed this action pursuant to 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security ("the Commissioner") to deny his application for Social Security disability benefits. Now pending are Roel's and the Commissioner's construed cross-motions for summary judgment. (D.E.s 9, 12, 13). Roel contends that the ALJ failed to apply the correct legal standard when she: (1) relied on occupations at step five of the sequential evaluation that had requirements inconsistent with the limitations in the residual functional capacity ("RFC"); and (2) failed to include mental limitations in the RFC that were congruent with the earlier finding of severe mental impairments. For the reasons discussed further below, it is recommended that Roel's

---

[1] Pursuant to the May 1, 2018, "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this order uses only Plaintiff's first name and last initial.

motion (D.E. 9) be **DENIED**, the Commissioner's motion (D.E. 12) be **GRANTED**, and this cause of action be **DISMISSED**.

## I.    JURISDICTION

This Court has jurisdiction under 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security and venue is appropriate because Roel resides in Jim Wells County, Texas.  42 U.S.C. § 405(g); 28 U.S.C. § 124(b)(6).

## II.    BACKGROUND & ADMINISTRATIVE RECORD

### a.  Application and Hearing

In May 2023, Roel filed an application for disability insurance benefits, alleging a disability commencing on May 1, 2022.  (D.E. 7-1 at 185-86, 234-42).  The Commissioner denied Roel's application both initially and on reconsideration.  (*Id.* at 72-73).

The ALJ held a hearing on August 21, 2024.  (*Id.* at 45).  At the hearing, a vocational expert identified Roel's past relevant work as an oil field equipment mechanic and forklift truck operator.  (*Id.* at 57).  In a first hypothetical, the ALJ asked the vocational expert whether a person with the same age, educational history, and work history as Roel could complete his past work if he was limited to medium-exertion work and: (1) could only occasionally balance, stoop, kneel, and crouch, but never crawl; (2) could occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds; and (3) must avoid hazards like moving machinery or heights and have no exposure to vibrations.  (*Id.* at 58-59).  The vocational expert responded that such a person could not complete Roel's past jobs, but could perform other jobs including: (1) marker, DOT 369.687-026 with over

2

57,000 jobs; (2) hand packager, DOT 920.587-018 with over 175,000 jobs; and (3) order picker, DOT 922.687-058 with over 55,000 jobs. (*Id.* at 59).

In a second hypothetical, the ALJ asked if jobs would be available if the person was limited to light-exertion jobs with all the other limitations from the first hypothetical. (*Id.* at 59-60). The vocational expert responded that such a person could perform jobs such as office helper, laundry folder, and mail clerk. (*Id.* at 60). In a third hypothetical, the ALJ inquired about a person who was limited to medium work, had all the other limitations previously discussed, and was further limited to occasional concentrated exposure to environmental irritants such as fumes, dust, and gases, and no concentrated exposure to extreme heat, cold, or humidity. The vocational expert responded that such a person could perform the jobs previously identified. (*Id.*). Similarly, if the person was limited to understanding, remembering, and carrying out detailed instructions and tasks, but not complex instructions or tasks, the previously identified jobs would still be available. (*Id.*). Finally, the same was true if the person was limited to light work. (*Id.* at 61). The vocational expert testified that her testimony was based on the information in the DOT, and where the DOT was silent on an issue, based on her knowledge, education, training, and experience. (*Id.* at 62).

> b. *ALJ Decision*

On November 21, 2024, the ALJ issued an opinion concluding that Roel was not under a disability since May 1, 2022. (*Id.* at 22-37). At the first step of the sequential evaluation process, the ALJ concluded that Roel had not engaged in substantial gainful

activity since May 1, 2022.  (*Id.* at 25).  At the second step, the ALJ concluded that Roel had several severe impairments, including type II diabetes mellitus, obstructive sleep apnea, allergic rhinitis and recurrent sinusitis, testicular hypofunction and hypogonadism, osteoarthritis of the knees, plantar fasciitis and left heel spur, lumbar degenerative disc disease, obesity, migraines, overactive bladder, somatic symptom disorder, unspecified anxiety disorder, and uncomplicated bereavement.  (*Id.*).  At the third step, the ALJ concluded that Roel did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (*Id.* at 26).  When considering the Paragraph B criteria for mental impairments, the ALJ concluded that Roel had: (1) a mild limitation in understanding, remembering, or applying information; (2) a mild limitation in interacting with others; (3) a moderate limitation in concentrating, persisting, or maintaining pace; and (4) a mild limitation in adapting or managing oneself.  (*Id.* at 27-28).  The ALJ noted that the limitations identified in the Paragraph B criteria were not a mental RFC assessment.  (*Id.* at 28-29).

The ALJ concluded that Roel had the RFC to perform medium work, with additional limitations including: (1) occasional balancing, stooping, kneeling, and crouching, but no crawling; (2) occasional climbing of ramps or stairs, but no climbing of ladders, ropes, or scaffolds; (3) no exposure to hazards such as moving machinery and heights; (4) no exposure to vibrations; (5) occasional, concentrated exposure to environmental irritants such as fumes, dust, and gases; (6) no concentrated exposure to extreme heat, cold, or humidity; and (7) the ability to understand, remember, and carry out detailed instructions

4

and tasks, but not complex instructions or tasks.  (*Id.* at 29).  At step four, the ALJ concluded that, based on his RFC, Roel was not able to perform his past relevant work.  (*Id.* at 35).  However, at step five, the ALJ concluded based on the vocational expert's testimony that Roel could perform other jobs in the national economy, including marker, hand packager, and order picker.  (*Id.* at 36-37).  The ALJ noted that some of Roel's limitations were not accounted for in the DOT and that the DOT does not account for jobs now performed with more modern tools and processes.  (*Id.* at 37).  However, the ALJ stated that the vocational expert testified that these issues were accounted for in her testimony based on her knowledge, education, training, and experience.  Thus, the ALJ concluded that Roel was not under a disability from January 14, 2023, through the date of the decision.  (*Id.*).

The Appeals Council denied Roel's request for review of the ALJ's decision.  (*Id.* at 6-8).

### III.  DISCUSSION

> *a. Whether the ALJ erred at step five by relying on occupations with requirements inconsistent with the limitations in the RFC determination*

In his motion for summary judgment, Roel first contends that the requirements of the three occupations the ALJ identified at step five were inconsistent with the physical limitations in the RFC determination.  (D.E. 9 at 3-4).  As to the marker position, Roel contends that it requires frequent stooping and frequent exposure to humidity.  (*Id.* at 4-5).  As to the hand packager position, Roel argues that it requires frequent exposure to atmospheric conditions and extreme heat.  (*Id.* at 5).  As to the order picker position, Roel

asserts that it requires frequent stooping and crouching. (*Id.*). Roel contends that the inconsistency between the job requirements and the RFC is a legal error that requires remand. (*Id.* at 5-6). He argues that the vocational expert's testimony is insufficient to save the ALJ's step five finding because the ALJ failed to resolve the inconsistencies between the testimony and the DOT. (*Id.* at 6-11).

The Commissioner responds that the vocational expert was familiar with the specific requirements of each occupation, and the ALJ properly relied on her testimony to make the step five finding. (D.E. 12 at 3). The Commissioner argues that Roel has shown, at most, an implied or indirect conflict with the DOT in regard to the hand packager job, which is not sufficient to show reversible error where it was not challenged in the administrative proceedings. (*Id.* at 4-5). Finally, the Commissioner asserts that, regardless of the other jobs identified by the ALJ, the hand packager job is sufficient to support the step five finding because over 175,000 such jobs exist in the national economy. (*Id.* at 5-6).

Roel replies that the Commissioner's brief incorrectly focuses on the substantial evidence standard when his argument is instead that the ALJ committed legal error. (D.E. 13 at 1). He argues that the Commissioner has not addressed the issues he identified with two of the three occupations the ALJ relied on, and has further conceded that there is some conflict between the vocational expert's testimony about the hand packager position and the DOT. (*Id.* at 2). He contends that this inconsistency requires remand because it must be resolved by the ALJ in accordance with agency regulations. (*Id.* at 2-7).

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In addition to being support by substantial evidence, an ALJ must apply the proper legal standards and conduct the "proceedings in conformity with the applicable statutes and regulations." *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). In other words, "in dealing with a determination or judgment which an administrative agency alone is authorized to make, [a reviewing court] must judge the propriety of such action solely by the grounds invoked by the agency." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

In evaluating a disability claim, the Commissioner follows a five-step sequential process to determine whether: (1) the claimant is participating in substantial gainful activity; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform other relevant work. *Martinez*, 64 F.3d at 173-174; 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant

7

bears the burden of proof on the first four steps, with the burden shifting to the Commissioner at the fifth step. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

At step five, ALJs "often seek the views of vocational experts," who must have "expertise and current knowledge of working conditions and physical demands of various jobs," along with "knowledge of the existence and numbers of those jobs in the national economy." *Biestek v. Berryhill*, 587 U.S. 97, 100 (2019) (internal quotation marks and brackets omitted). "When offering testimony, the experts may invoke not only publicly available sources but also information obtained directly from employers and data otherwise developed from their own experience in job placement or career counseling." *Id.* (internal quotation marks omitted). The ALJ properly concludes that work exists in the national economy "when there is a significant number of jobs (in one or more occupations) having requirements" that the claimant can meet given their RFC. 20 C.F.R. § 404.1566(b).

Vocational expert testimony should generally be consistent with the information in the DOT. Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 at *2. However, when "there is an apparent unresolved conflict between [vocational expert] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational export] evidence to support a determination or decision about whether the claimant is disabled." *Id.* The ALJ must inquire on the hearing record whether a vocational expert's testimony is consistent with the DOT. *Id.* If there is an inconsistency, the ALJ must resolve the conflict by determining if the vocational expert's explanation is reasonable and provides a basis to rely on the testimony over the DOT. *Id.* The ALJ has

an affirmative responsibility to ask the vocational expert about any possible conflicts, and if their testimony appears to conflict with the DOT, the ALJ must obtain a reasonable explanation for that conflict. *Id.* at *4.

"In instances of implied conflicts, claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Daniel D. v. O'Malley*, No. 4:23-CV-780, 2024 WL 1096571, at *5 (S.D. Tex. Mar. 13, 2024) (internal quotation marks omitted). Thus, where the vocational expert testifies that their testimony is consistent with the DOT, the ALJ is not required to address an implied conflict in the written decision. *Id.*

> According to the Dictionary of Occupational Titles, a hand packager:

> Packages materials and products manually, performing any combination of following duties: Cleans packaging containers. Lines and pads crates and assembles cartons. Obtains and sorts product. Wraps protective material around product. Starts, stops, and regulates speed of conveyor. Inserts or pours product into containers or fills containers from spout or chute. Weighs containers and adjusts quantity. Nails, glues, or closes and seals containers. Labels containers, container tags, or products. Sorts bundles or filled containers. Packs special arrangements or selections of product. Inspects materials, products, and containers at each step of packaging process. Records information, such as weight, time, and date packaged.

D.O.T. 920.587-018. The DOT entry for the job further provides examples of various industries wherein someone could work as a hand packager. *Id.* The job is medium work that requires, among other things, frequent exposure to extreme heat and atmospheric conditions. *Id.*

Here, Roel has not established that the ALJ legally erred in his conclusion at step five that other work existed in the national economy.  Specifically with regard to the hand packager position, Roel has shown at best an implied conflict between the job requirements in the DOT and the limitations the ALJ identified in the RFC.  Roel contends that the hand packager position requires frequent exposure to atmospheric conditions and extreme heat, which is inconsistent with the ALJ's conclusions that he can have only occasional, concentrated exposure to environmental irritants and no concentrated exposure to extreme heat.  (D.E. 7-1 at 29); D.O.T. 920.587-018.  However, "frequent" describes how often the exposure occurs, while "concentrated" describes the intensity of the exposure.  This distinction is illustrated by the ALJ's inclusion of the adjective "occasional" in addition to "concentrated" when discussing exposure to environmental irritants, thereby limiting both the frequency and the intensity of Roel's exposure to those conditions.  (D.E. 7-1 at 29).  Accordingly, Roel has not shown an apparent conflict between the ALJ's RFC limitations and the requirements of the hand packager job because "frequent" and "concentrated" do not describe the same thing.

Nonetheless, the ALJ was required to inquire on the hearing record whether the vocational expert's testimony was consistent with the DOT.  SSR 00-4p, 2000 WL 1898704 at *2.  The ALJ did so here, and the vocational expert testified that her testimony was based on the information in the DOT, and where the DOT was silent on an issue, based on her knowledge, education, training, and experience.  (D.E. 7-1 at 62).  Given this answer, which was unchallenged at the hearing, and because there was no apparent conflict

between the vocational expert's testimony and the hand packager job, the ALJ was not required to address the implied conflict in her decision.  *See Daniel D.*, 2024 WL 1096571 at *5; SSR 00-4p, 2000 WL 1898704 at *2, 4.  Accordingly, Roel has not established that the ALJ applied the wrong legal standard in her discussion of the hand packager job.

However, this does not end the inquiry. The Commissioner has not raised any argument regarding the marker or order picker positions and has effectively conceded that there is a direct conflict between the job requirements in the DOT for those occupations and the limitations in the RFC.  (*See generally* D.E. 12).  Thus, the existence of the hand packager job alone must constitute substantial evidence to support the ALJ's step five conclusion.[2]  Under the regulations, work exists in the national economy "when there is a significant number of jobs (in one or more occupations) having requirements" that the claimant can meet given their RFC.  20 C.F.R. § 404.1566(b).  The vocational expert testified that 175,000 hand packager jobs exist in the national economy, and the ALJ relied on this testimony in her decision.  (D.E. 7-1 at 36-37, 59).  The Fifth Circuit has concluded that evidence showing 50,000 available jobs in a single occupation is sufficient to support an ALJ's conclusion at step five that other work exists in significant numbers in the national economy.  *Lirley v. Barnhart*, 124 F. App'x 283, 284 (5th Cir. 2005).  Given this, substantial evidence also supported the ALJ's conclusion here where the evidence shows 175,000 hand packager jobs in the national economy, regardless of whether the ALJ could

---

[2] Although Roel has explicitly not raised any argument regarding the substantial evidence standard, this memorandum will address the issue for completeness.

also have relied on the vocational expert's testimony regarding the marker and order picker positions. Accordingly, Roel has not shown reversible error in the ALJ's step five analysis.

> b. *Whether the ALJ erred because the mental limitations in the RFC determination were inconsistent with the earlier finding of severe mental impairments*

Roel next contends that, under the applicable regulations, the mental limitations in the RFC are inconsistent with the ALJ's earlier conclusion that her mental impairments were severe. (D.E. 9 at 13-14). Specifically, Roel argues that a severe mental impairment is one that significantly limits the ability to perform "basic work activities," and "basic work activities" are defined to include understanding, carrying out, and remembering "simple instructions." (*Id.* at 13-14). Accordingly, Roel contends that, in order to be consistent with the regulations, the ALJ's severity determination dictates a higher level of impairment than the RFC's limitation to understanding, remembering, and carrying out detailed instructions and tasks. (*Id.* at 14-18).

The Commissioner responds that the RFC determination adequately accounted for the earlier Paragraph B finding of a moderate limitation in concentration, persistence, or pace. (D.E. 12 at 6). The Commissioner argues that the Paragraph B analysis and RFC analysis have different standards, and the findings at the Paragraph B stage do not require any specific limitation in the RFC. (*Id.* at 6-7).

Roel replies that the Commissioner's brief misconstrues his argument, which is not that the severity and Paragraph B findings require specific limitations in the RFC, but rather

that the broad mental limitations found at those steps cannot disappear from the RFC determination without explanation.  (D.E. 13 at 7-9).

The second step of the sequential analysis requires that the factfinder decide whether the claimant's impairment is "severe," irrespective of age, education and work experience. *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992).   An impairment can only be considered as not severe if it is so slight that it would not be expected to interfere with the individual's ability to work.  *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).  RFC, which is determined between the third and fourth steps, is the most a claimant can do despite their limitations.   20 C.F.R. § 404.1545(a).   The "limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C."  SSR 96-8P, 1996 WL 374184 at *4.

Here, Roel has not shown that the ALJ's RFC determination was inconsistent with her earlier finding of severe mental impairments.  In December 2025, the court in *Lopez v. Bisignano*, No. SA-25-CV-232-OLG (HJB), 2025 WL 4033863 (W.D. Tex. Dec. 19, 2025), addressed an identical argument.  In *Lopez*, "the ALJ … found moderate deficits in concentration, persistence, and pace, and incorporated that finding into the RFC by limiting Plaintiff to carrying out detailed but not complex instructions."  *Id.* at *5 (internal brackets and quotation marks omitted).  Claimant raised the same argument that Roel now makes:

13

"that the ALJ's RFC finding contained no limitations on the claimant's ability to perform basic work activities." *Id.* at *4. The court noted that this argument had been "repeatedly rejected by courts in the Fifth Circuit," and findings similar to the ALJ's here had "been upheld in numerous other courts." *Id.* at *4-5 (citing *Roberts v. Comm'r of Soc. Sec.*, No. 4:24-CV-930-BP, 2025 WL 1268116 (N.D. Tex. May 1, 2025)). This was because "the paragraph B findings at step 3 and do not directly correlate to the RFC," and there was "no authority that a finding of a severe limitation at step two must correspond to an RFC finding that specifically limits understanding, carrying out, and remembering simple instruction." *Id.* This court reached the same conclusion in *Wells v. Saul*, No. 6:20-CV-00014, 2021 WL 4976724, at *8 (S.D. Tex. June 10, 2021), *report and recommendation adopted,* No. 6:20-CV-00014, 2021 WL 4973714 (S.D. Tex. Oct. 25, 2021), where essentially the same argument was made.[3]

The facts here are indistinguishable from those in *Lopez* and *Roberts*. As in both of those cases, the ALJ here found a moderate limitation in Roel's ability to concentrate, persist, or maintain pace when considering the Paragraph B criteria, and incorporated that finding in the RFC by limiting Roel to understanding, remembering, and carrying out detailed instructions and tasks, but not complex instructions or tasks. (D.E. 7-1 at 27-29).

---

[3] Notably, Roel and the claimants in *Wells*, *Lopez*, and *Roberts* were all represented by the same counsel. Despite his experience raising this argument, counsel's brief does not cite any case adopting his interpretation of the regulations and caselaw. *See also Roberts*, 2025 WL 1268116 at *4 (noting that the claimant had cited no authority finding that a severe limitation at step two must correspond to an RFC limitation of understanding, carrying out, and remembering only simple instructions).

14

Accordingly, for the same reasons as in *Lopez* and *Roberts*, Roel has not shown that the ALJ applied the wrong legal standard in crafting the mental RFC.

### IV.    RECOMMENDATION

Accordingly, it is recommended that Roel's motion (D.E. 9) be **DENIED**, the Commissioner's motion (D.E. 12) be **GRANTED**, and this cause of action be **DISMISSED**.

Respectfully submitted on February 10, 2026.

_____
Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).